UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re:

Isis Shakir,                                                                                      Chapter 7
                                                                                                       Case No. 12-41817 (NHL)

                              Debtor.
----------------------------------------------------------------x
Isis Shakir,

                              Plaintiff,

-against-
                                                                        Adv. Proc. No. 12-01130 (NHL)

Sallie Mae,
                              Defendant.
----------------------------------------------------------------x

# MEMORANDUM OPINION DENYING MOTION
# FOR SUMMARY JUDGMENT

Before the Court is the motion of plaintiff, Isis Shakir (the "Plaintiff" or "Debtor"), seeking summary judgment declaring that defendant, Sallie Mae (the "Defendant"), cannot prove the existence of any sum claimed to be owed by Plaintiff to Defendant (the "Motion"). Defendant opposes the Motion. For the reasons set forth below, Plaintiff's Motion is denied as a matter of law.

### Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by order dated December 5, 2012. This matter is a core proceeding under 28 U.S.C. § 157(b)(2). This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

Procedural History

Debtor filed a pro se petition under Chapter 7 of the Bankruptcy Code on March 14, 2012 (the "Petition"). On April 9, 2012, Debtor commenced this adversary proceeding pro se by filing a Complaint under section 523(a)(8) of the Bankruptcy Code seeking to have the educational loan debt owed to Defendant discharged on the ground that excepting such debt from discharge would impose an undue hardship on the Debtor. The following day an amended verified Complaint was filed pro se (the "Amended Complaint"[1]). (Docket #4) After acquiring pro bono counsel to represent her, Debtor sought leave of this Court to amend the Amended Complaint, which was granted over Defendant's objection at a hearing on December 11, 2012. The Motion was filed on December 18, 2012. Defendant filed its response on January 8, 2013. The Court held a hearing on the Motion on January 15, 2013, and heard oral arguments from counsel for both the Plaintiff and Defendant (the "Hearing").

Facts

The facts relevant to the Motion are not in dispute. On June 27, 2008, Plaintiff completed and signed a Tuition Loan Answer Application (the "TLAA") with Defendant, for a loan of $29,000 (the "Debt"). (12-1130, Docket #29-1) The TLAA was a 12-page document, sequentially numbered. The first three pages are in the form of an application that required Plaintiff to fill in data about herself ("The Application"). The remainder of the TLAA bore the subhead "Promissory

---

[1] On November 20, 2012, Debtor, represented by pro bono counsel, filed a motion seeking leave to file a second amended complaint and alleging that Defendant was engaged in "deceptive trade practices," which involved "preparing an intentionally misstated Loan Application/Note and Misleading Plaintiff as to the amount of interest to be charged" (the "Motion for Leave"). (Docket #19) The Court granted the Motion for Leave at a hearing held December 11, 2012. Plaintiff filed the instant Motion on December 18, 2012, the same date the Court issued its Order granting the Motion for Leave. (Docket #28) After the Hearing, Plaintiff pro se filed the Second Verified Complaint (Docket #33), which the Court is not considering in its determination of this Motion.

Note" ("the Note"). Plaintiff was asked to execute the TLAA on page 3; no other signature was required anywhere else in the TLAA. Above the signature line bearing Plaintiff's signature on page 3 is a section that begins with the words "Promise to pay" and above that are three columns of type. The left-hand column states:

> I understand I am not required to fax my signature on this Application/Promissory Note to the Lender. If I choose to fax my signature on this Application/Promissory Note to the Lender, I intend: (i) my fax signature to be binding on me and to be an electronic signature under applicable federal and state law. . ..

In the center column, under Notice to Customer subdivision (a), the following language appears:

> (a) Do not sign this before you read the Promissory Note even if otherwise advised.

(12-1130, Docket #29-1 p.3)

In the right-hand column, the following is recited:

> I have read and agree to the terms of the Promissory Note accompanying this application.

(*Id.*)

Beneath these three columns of type and above the signature line bearing Plaintiff's signature, there is a promise to pay, which reads as follows:

> Promise to pay: Jointly and severally with the other signers below, I promise to pay the lender or any other holder of this loan all sums disbursed under the terms of the Promissory Note, plus interest and all other charges that may become due. The term and conditions set forth in the Promissory Note constitute the entire agreement between us.

("Promise to Pay") *Id.* Immediately after this statement and just above the signature line bearing

Page 3

Plaintiff's signature, the following language appears in capital letters and in bold type:

> **CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

(*Id.*)

The entire TLAA, comprising both the Application and the Note, were faxed to Defendant on June 30, 2008, along with a facsimile cover sheet bearing the Plaintiff's name, address, telephone number, and social security number. (*Id.* #29-1,5) The cover sheet reflects that nineteen pages are being faxed to Sallie Mae Tuition Answer Loan Processing to the attention of the Loan Processing Department and also identifies eight different documents, including, *inter alia*, "1) Executed Application;" and "2) Promissory Note[.]" (*Id.* #29-5) At the bottom of the cover sheet is a June 30, 2008 date of receipt imprinted by Defendant's fax at 6:33 p.m. (the "Time Stamp") and the page number "1." (*Id.*) The same Time Stamp appears on every other page of the fax, including pages 1-3 of the TLAA, renumbered by the faxing process as page numbers 2 through 4 of the fax (*Id.* #29-1), and pages 4-12 of the TLAA , renumbered by the faxing process as page numbers 5 through 13 of the fax. The remaining pages of the fax included a co-signer's bank statement and tuition bills.

It is not disputed that Plaintiff later received the funds from Defendant, used them toward her education (12-1130, Docket #29-3), and began repaying some of the Debt. (12-1130, Docket #4 ¶4)   The third paragraph of the Amended Complaint describes the Debt as follows:

> 3. <u>Loan Breakdown</u>. One of the unsecured debts owing by the Debtor and listed in Schedule F is a PRIVATE student loan(s) owing to Defendant Sallie Mae:
> Sallie Mae Account # [xxxxxxx]177-1 [account number redacted in this quote, from Plaintiff's original filings, Pursuant to Bankruptcy Rule 9037(A)(4)].
> . . .

Page 4

>This loan was incurred to pay expenses at La Guardia Community College and a Post-Secondary Institute.

(*Id.* ¶3)

With the Petition, Debtor filed the required Schedule F–Creditors Holding Unsecured Nonpriority Claims, where she listed the Debt as owed to Defendant for a January 2008 private student loan in the amount of $21,520.[2] Debtor amended Schedule F on December 13, 2012, just prior to filing the Motion, to reflect that she now disputes the validity of the Debt, and to provide an additional caption for the creditor's name as Sallie Mae, Inc. (12-41817, Docket # 30)

Plaintiff attached as an exhibit to the Motion the Note, Defendant's responses to Plaintiff's first request for document production, and an Affidavit signed by Debtor stating she has never "seen this 'Promissory Note' before, referring to pp. 4-12 of the TLAA, and never signed this document or agreed to it." (12-1130, Docket #26) Plaintiff did not include pages 1-3 of the TLAA, the Application, with the Motion. The Defendant's Response did include the entire TLAA, both the Application and the Note.

## Arguments

The Motion does not seek the same relief sought in the Amended Complaint. The latter sought a judgment declaring the loan dischargeable based upon the undue hardship provision of section 523(a)(8) of the Bankruptcy Code. The Motion, instead, asserts that the issue of undue hardship is irrelevant because there is no binding obligation. Plaintiff's reasoning is that Defendant has not and cannot establish the existence of the Debt because the Note was not signed by the Plaintiff; neither Plaintiff's name or Defendant's name can be found on the Note; and the Note does not contain any loan amount or terms that would link the Plaintiff to the Note. In the Response,

---

[2] Debtor's Schedule F also reflects a 1995 federal loan debt owed to Sallie Mae in the amount of $3,399. That particular debt is not at issue.

Page 5

Defendant argues that because the TLAA consists of both the Application and the Note, and since the Application portion of it contains language explicitly incorporating the Note portion of the document by reference, the Application and the Note together create and evidence the valid and binding indebtedness.

## Standard for Summary Judgment

A Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. BANKR. P. 7056(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." Here, the material facts, as outlined above, are not in dispute. Therefore the Court must determine the legal issue of whether the Plaintiff's signing of the Application portion of the TLAA was sufficient to create a debt obligation from Plaintiff to Defendant on the terms set forth in the Note section of the TLAA.

## Legal Analysis

*Choice of Law*

The Note contains a provision stating that "the lender is located in the state of Utah" and that "the provisions of this note will be governed by federal laws and the laws of [Utah]." (12-1130, Docket 29-1 ¶O.1) "[A] choice-of-law clause in a contract will apply to disputes about the existence or validity of that contract[.]" *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 50 (2d Cir. 2004).

*The Application and Note Are Enforceable Under Utah Law*

Plaintiff argues the Note, and therefore the Debt, is unenforceable because she did not sign it, cannot be linked to it, and did not see or read it. Under Utah law, a credit agreement is enforceable if it

    (A) is in writing;
    (B) expresses consideration;
    (C) sets forth the relevant terms and conditions; and
    (D) is signed by the party against whom enforcement of the agreement would be sought.

UTAH CODE ANN. § 25-5-4 (2)(b)(i)(West 2012). Under this statutory provision the TLAA qualifies as a credit agreement by a financial institution to lend money, and meets the requirements for enforceability under the statute. *See Id.* § 25-5-4 (2). Additionally, "a signed application constitutes a signed agreement, if the creditor does not customarily obtain an additional signed agreement from the debtor when granting the application." *Id*. § 25-5-4 (2)(b)(ii). Here, the Note does not call for or even provide a place for the Plaintiff's signature because the language appearing directly above Plaintiff's signature on the Application provides that, by signing, she understands she is bound to the terms of the Note. The Application specifically incorporates the terms and conditions of the Note by reference. By executing the Application, the Plaintiff is expressly "agree[ing] to the terms of the [Note] accompanying" the Application. Moreover, the Promise to Pay just above Plaintiff's signature on the Application states that the "terms and conditions set forth in the [Note] constitute the entire agreement between" Plaintiff and Defendant. (12-1130, Docket #29-1) Nor may Plaintiff argue that her signature was invalid because the document was faxed to Defendant since, by its terms, the Application expressly provides that if she chose to fax it, which she did, it would be a valid electronic signature under applicable state and federal law. It is inconceivable that Plaintiff never saw the Note, as she claims, since she herself faxed it to Defendant with the rest of the TLAA.

Page 7

Under Utah law, contracting parties can also bind themselves to terms not present in the signed document by "incorporat[ing] by reference other documents and mak[ing] the documents incorporated by reference part of the contract." *Zions First Nat'l Bank v. Allen*, 688 F.Supp. 1495, 1498 (D.Utah 1988). Thus, terms of a contract can be supplied by documents other than the one that is signed by the contracting parties. *Wilson v. Johnson*, 234 P.3d 1156, 1162 (Utah Ct. App. 2010). Whether a document "is made part of the contract is determined by the intentions of the parties. If the contract is in writing and the language is not ambiguous, the intention of the parties must be determined from the words of the agreement." *Iadanza v. Mather*, 820 F. Supp. 1371, 1386 (D. Utah 1993). Here, Plaintiff bound herself to the terms of the Note by signing the Application, which unambiguously incorporated by reference the Note and its terms and conditions.[3] *See, e.g.*, *Consol. Realty Group*, 930 P.2d 268, 273 (Utah Ct. App. 1996) (finding that the non-drafting party consented to the incorporation of the Utah Arbitration Act where that document is specifically named in the signed agreement). The Note was incorporated into the Application by the Promise to Pay and the language printed directly above Plaintiff's signature. (12-1130, Docket #29-1)

Plaintiff's alternative argument that she cannot be bound by the Note because she did not see or read it also cannot be sustained under these facts. When "a person signs a document, he is not permitted to show that he did not know its terms, and in the absence of fraud or mistake he will be bound by all its provisions, even though he has not read the agreement and does not know its

---

[3] Even without her signature Plaintiff would be bound by subsection (2)(e) of the Utah statute, which provides that a credit agreement is binding and enforceable, even without a signature by the party to be charged if:
    (i) the debtor is provided with a written copy of the terms of the agreement;
    (ii) the agreement provides that any use of the credit offered shall constitute acceptance of those terms; and
    (iii) after the debtor receives the agreement, the debtor, or a person authorized by the debtor, requests funds pursuant to the credit agreement or otherwise uses the credit offered.
UTAH CODE ANN. § 25-5-4 (2)(e).

contents." *Semenov v. Hill*, 982 P.2d 578, 581 (Utah 1999). Thus one party does "not have a duty to ensure that the other party has a complete and accurate understanding of all terms embodied in a written contract. Rather, each party has the burden to read and understand the terms of a contract before he or she affixes his or her signature to it." *John Call Eng'g, Inc. v. Manti City Corp.*, 743 P.2d 1205, 1207-08 (Utah 1987). Further, the Application contained prominent language cautioning her to read the documents before signing it. Therefore, her alleged ignorance of its contents does not prevent its incorporation into the contract. *See Semenov*, 982 P.2d at 581 (holding that a party "is not permitted to show that [she] did not know its terms . . . even though [she] has not read the agreement and does not know its contents[.]"). Moreover, Plaintiff signed below the statement that "I have read and agree to the terms of the Promissory Note accompanying this application."

*Same Result Applying New York Law*

If the Court were to apply New York law on the issue of enforceability, the result would be the same. A document referred to in a written contract "and sufficiently described may be made a part of the instrument as if incorporated into the body of it." *Jones v. Cunard S.S. Co.*, 238 A.D. 172, 173 (2d Dep't 1933). The New York rule "requires that the paper to be incorporated into a written instrument by reference must be so referred to and described in the instrument that the paper may be identified beyond all reasonable doubt." *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1201 (2d Cir. 1996). As with the signed document itself, "a party's failure to read a duly incorporated document will not excuse the obligation to be bound by its terms." *Id.* at 1201.

Page 9

A person who signs a written contract is bound by its terms. In *Gold v. Deutsche Aktiengesellschaft*, the Second Circuit Court of Appeals, applying New York law, noted that "in the absence of fraud or other wrongful act on the part of another contracting party, a party 'who signs or accepts a written contract ... is conclusively presumed to know its contents and to assent to them ....'" *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004). Specifically, when the terms in question are printed "in plain English directly above" the party's signature, that party is obligated to read those terms and is "conclusively bound by his signature." *Generale Bank, N.Y. Branch v. Wassel*, 779 F.Supp. 310, 315 (S.D.N.Y. 1991). The incorporated writing need not be signed by the contracting parties. *See Zahr v. Wingate Creek Acquisition Corp.*, 827 F.Supp 1061, 1066 (S.D.N.Y. 1993) (finding that unsigned documents may supply terms for the contract).

Again, the evidence does not support Plaintiff's arguments that she never saw the Note. She signed her name below a statement asserting that she read and agreed to the terms of the Note. Nor does New York case law provide any support for Plaintiff's position that the Note is invalid because she did not sign it. By signing the Application, Plaintiff is "presumed to have known its contents and to have assented to them." *Gold*, 365 F.3d at 149. Thus, she is presumed to have read what was printed in plain English directly above her signature: "I promise to pay the lender or any other holder of this loan all sums disbursed under the terms of the Promissory Note . . ..The terms and conditions set forth in the Promissory Note constitute the entire agreement between us." Because the Note is a "duly incorporated document" and conspicuously labeled "Promissory Note" on Page 4 of the TLAA, it was "identified beyond all reasonable doubt." *PaineWebber Inc.*, 81 F.3d at 1201. As such, Plaintiff is bound by its terms.

<u>Conclusion</u>

Accordingly, the Court denies Plaintiff's Motion for Summary Judgment. As for that portion of the Defendant's Response seeking sanctions against the Plaintiff for filing the Motion for Summary Judgment, the Court will schedule a separate hearing to determine whether such relief is warranted. A separate order shall be issued forthwith.

**Dated: March 29, 2013**
**Brooklyn, New York**

**Nancy Hershey Lord**
**United States Bankruptcy Judge**